CHICO'S PIZZA FRANCHISES, INC., an
Oregon corporation, Plaintiff,

v.

Glynn H. SISEMORE and Evelyn Sise-
more, husband and wife, and their mari-
tal community, and Gilberto's Pizza,
Inc., a Washington corporation, Defend-
ants.

No. C–79–416.

United States District Court,
E. D. Washington.

Oct. 15, 1981.

Bruce E. H. Johnson of Davis, Wright,
Todd, Riese & Jones, Seattle, Wash., for
plaintiff.

Lawrence R. Small of Paine, Hamblen,
Coffin & Brooke, Spokane, Wash., for de-
fendants.

## MEMORANDUM AND ORDER

ROBERT J. McNICHOLS, Chief Judge.

The sole issue presented on plaintiff's Mo-
tion for Partial Summary Judgment con-
cerns retroactive application of Washington
State's Franchise Investment Protection
Act (FIPA) codified at R.C.W. 19.100.

Substantive merits of this litigation are
not presently before the Court. At issue,
rather, is the applicability of relevant FIPA
provisions. Specifically, Chico's argues that
this legislation, first enacted in 1971, sub-
stantially impairs contractual rights and ob-
ligations as contemplated by the parties at
the time of entering into the franchise
agreement the previous year. Plaintiff
contends such impairment is prohibited by
the Contracts Clause of the Federal Consti-
tution.

RCW 19.100.180(2)(c) proscribes discrimi-
nation among franchisees with reference to
royalties, charges, goods, services, "or any
other business dealing" unless the fran-
chisor can demonstrate that disparate treat-
ment is rationally and justifiably based on
sound business practices. This statute thus
accords Washington franchisees what one
commentator has characterized as a "most-
favored-nation" status, in that the fran-

chisor must treat all those with whom it deals on equally favorable grounds. Chisum, *State Regulation of Franchising: The Washington Experience*, 48 Wash.L.Rev. 291, 374 (1973). Defendants contend that Chico's has practiced such discrimination, and point to other franchising agreements executed in Washington which provide somewhat more favorable terms and conditions to franchisees.

RCW 19.100.900 purports to apply the foregoing provision "to all franchises and contracts existing between franchisors and franchisees" at the time of enactment. This retroactivity feature has never been authoritatively construed by the Washington courts.

■ The constitutional provision at issue dictates that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S.Const., Art. 1, § 10, cl. 1. The stringency with which this language is applied has undergone an evolution over the course of history, and it is now clear that "the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula." *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428, 54 S.Ct. 231, 236, 78 L.Ed. 413 (1934). Police power reserved in the States and utilized in furtherance of public health, safety and welfare may often overbalance the Contracts Clause, thus allowing such impairment of rights as may be necessary to preserve this function of state sovereignty. *El Paso v. Simmons*, 379 U.S. 497, 508, 85 S.Ct. 577, 583, 13 L.Ed.2d 446 (1965). Judicial balancing must take into account "the scope of the State's reserved power [which] depends on the nature of the contractual relationship with which the challenged law conflicts." *United States Trust Company of New York v. New Jersey*, 431 U.S. 1, 22, 97 S.Ct. 1505, 1517, 52 L.Ed.2d 92 (1977).

The position of the United States Supreme Court was further clarified in *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). That decision suggested a progressive multistage inquiry in balancing legitimate state interests against contractual reliance.

First, there must in fact be an impairment of existing rights, and such impairment must be substantial. *Id.* at 244, 98 S.Ct. at 2722. Second, the nature of the state interest in promoting police power functions must be weighed. As indicia of the legitimacy of such exercise, the following factors may be relevant: (1) the emergency nature of the legislation; (2) whether the state had previously regulated the subject activity; (3) whether the impact is generalized or specifically directed toward a narrow class; (4) whether reliance on pre-existing rights was both actual and reasonable; and (5) whether the challenged law "worked a severe, permanent, and immediate change in those relationships" reasonably relied upon. *See generally, id.* at 247–250, 98 S.Ct. at 2723–2725.

The Ninth Circuit Court of Appeals has not often been called upon to construe the Contracts Clause. Where that Court has ruled, however, adherence to *United States Trust Co. v. New Jersey, supra*, and *Allied Structural Steel Co. v. Spannaus, supra*, has been exacting. It has been held, for example, that although a state legislature's determination of public need and purpose must be accorded great deference, "an impairment that is severe, permanent, irrevocable and retroactive" may be suspect, and will be sustained only if it serves a "broad generalized economic or social purpose." *Morseburg v. Balyon*, 621 F.2d 972, 979 (9th Cir.), *cert. den.*, 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980); *accord, Northwestern National Life Insurance Co. v. Tahoe Regional Planning Agency*, 632 F.2d 104 (9th Cir. 1980).

■ In applying the first step of the *Allied* test to the instant case, I conclude that enforcement of RCW 19.100. against the franchisor would substantially impair its contractual rights. The parties entered into a presumptively valid contract with an expected duration of twenty years. Each gave substantial consideration in contemplation of pursuing that agreement. If defendants had discovered that Chico's accorded other franchisees perhaps more favorable treatment prior to the passage of

FIPA, that realization would have been fruitless except to the extent such dealings may have been shown to run contrary to a common law requirement of good faith. Upon enactment of FIPA, however, the defendants suddenly had a colorable claim which, under the terms of RCW 19.100.180–190, could result in confronting the hapless franchisor with the choice of extending "most favorable" treatment to defendants or facing the triple damage provisions of RCW 19.86. *See* RCW 19.100.190. Treating the relevant portions of the pleadings as true, the conclusion is inescapable that FIPA profoundly altered, to the point of potential obliteration, the reasonable expectations of the parties.

Turning to the second leg of the *Allied* test, whether the state interest in having the statute applied outweighs the right of a party to enforce a contract, the following factors must be analyzed.

a. *Emergency.* RCW 19.100 was passed in 1971, but did not take effect until the following year on May 1, 1972. Presumably, legislative intent was designed to give prospective franchising parties an opportunity to evaluate future contractual relationships and to gear operations accordingly. Clearly, there was no exigency apparent under these facts.

b. *Previous state regulation.* FIPA represented entry into a new field of regulation. That the State had the right to regulate franchise arrangements may be beyond debate, but it is also most unlikely that franchising parties in 1970 could have foreseen the eventuality of the enactment.

c. *Generalized vs. particularized impact.* Over the long run, there may well be a presumption of widespread social benefit due to the regulatory action undertaken. *See, Morseburg v. Balyon, supra,* at 979. The immediate purpose of RCW 19.100, however, was to focus on an extremely narrow band of commercial activity. That there may be a trickle-down effect eventually inuring to the general welfare does not obviate the narrowness of foreseeable societal impact.

d. *Actual and reasonable reliance.* Nothing contained in the pleadings would indicate the franchise agreement at issue to be speculative or unsettled. On the contrary, it would appear that the parties contemplated their respective positions, bargained for the projected benefits, and relied upon the binding nature of the resulting contract.

e. *Severe, permanent, and immediate change.* Although the one-year grace period between enactment and effective date gave ample notice to prospective franchising parties, that same advance warning did not accrue to the benefit of those persons with pre-existing relationships. On April 30, 1972, such agreements may have been valid, binding, bargained-for embodiments of commercial understandings. As of the stroke of midnight, such contractual expectations became awash in a sea of uncertainty, and potentially voidable at the whim of the franchisee.

Balancing the legitimate state objectives in exercising regulatory control over franchising arrangements against the rights guaranteed by the Contract Clause, the conclusion must be that RCW 19.100, as applied in this case, effects an unconstitutional abridgement of contractual obligations. While the substantive merits of this litigation have yet to be ascertained, I conclude that the franchise agreement between the parties here is not affected by application of Washington's FIPA.

Therefore,

IT IS ORDERED that plaintiff's Motion for Partial Summary Judgment is GRANTED.