**LADS TRUCKING COMPANY, a California corporation, Plaintiff,**

v.

**SEARS, ROEBUCK AND CO., a New York corporation, and Does 1 through 50, inclusive, Defendants.**

No. CV 87–4384–DWW (JRx).

United States District Court, C.D. California.

Aug. 25, 1987.

---

Gelfand & Hinojosa, Los Angeles, Cal., for plaintiff.

Ann K. Smith, Neil A. Granger, James A. Murphy, Sears, Roebuck and Co., Alhambra, Cal., for defendant, Sears, Roebuck and Co.

## MEMORANDUM DECISION RE: ORDER DENYING PRELIMINARY INJUNCTION

DAVID W. WILLIAMS, Senior District Judge.

### STATEMENT OF FACTS

In 1967 Lads Trucking Company ("Lads") was formed exclusively to service the Sears, Roebuck & Co. ("Sears") home delivery operation out of one of its three distribution centers for the greater Los Angeles area, located at Chatsworth. The term of the contract was one year and provided that either party could terminate the agreement by giving a 60-day notice to the other party in the event an earlier ending was desired.

For twenty years, the parties continued their relationship by renewing the contract on its anniversary date on the same terms. Lads was to furnish all the trucks and drivers necessary to transport goods sold by Sears to the homes of Sears customers in its area. Until 1985, Lads delivered only for Sears, but since that date, has entered into contracts delivering for other customers in addition to Sears. This did not interfere with the Sears operation.

In 1987 Sears reached a business decision to consolidate all its Los Angeles deliveries into the hands of one carrier and it invited bids from other carriers, including plaintiff, to undertake this enlarged responsibility.

Plaintiff submitted its bid but another firm was awarded the contract and plaintiff was notified by Sears that its contract for delivery would end on April 1, 1987. Lads filed a Complaint in the Los Angeles Superior Court alleging breach of contract and other related causes of action and asked for an injunction to prevent cessation of the relationship. A hearing was held in that court and the relief sought was denied.

Immediately thereafter, Sears removed the case to this Court under 28 U.S.C. § 1332 and Lads moved for issuance of a temporary restraining order. The Court granted such order *solely* because there was an issue whether the termination date served on Lads by Sears was timely and to permit the *status quo* to be maintained through the questioned period.

A hearing was thereafter set on plaintiff's motion for a preliminary injunction. Lads raised the rather novel contention that this contract came under the ambit of the Franchise Investment Law (California Corporation Code Section 31000 et seq.) and that Sears' failure to renew the franchise was governed by Business and Professions Code Section 20025 which requires 180 days written notice. The Court considered the briefs and heard oral argument and now denies the preliminary injunction.

### FRANCHISING ARGUMENT

Generally, franchising is a method of expanding a business by licensing independent businessmen to sell the franchisor's product or service or to follow a format and tradestyle created by the franchisor using the franchisor's trademarks and trade names. 1 G. Glickman, *Franchising*, § 2.01. Basically the businesses fall into three categories:

(1) Distributorships,

(2) Business format franchises under which a wide range of goods and services are offered under the franchisor's trade name and format, and

(3) A manufacturing or processing format under which the franchisor transmits to the franchisee the essential ingredients or formula for making a

product to the manufactured and marketed in accordance with the franchisor's standards. *Id.* at § 2.01.

■ Ordinarily, the arrangement embraces a concept whereby the franchisee agrees to aggressively sell the franchisor's product in a given area by distributing goods made according to the franchisor's formula and by employing prescribed marketing techniques which include using franchisor's trade name and trade dress and by advertising goods only in a manner prescribed by franchisor. The arrangement presupposes the establishment of a business relationship between the franchise and his customer so that the latter looks to the franchisee in matters of complaint for quality of product, etc.

■ California Corporation Code Section 31005 and California Business and Professions Code Section 20001 provide the following:

"Franchise means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:

(a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and

(b) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logo type, advertising or other commercial symbol designating the franchisor or its affiliate; and

(c) The franchisee is required to pay, directly or indirectly a franchise fee."

The essential elements needed to create a franchise do not exist. Lads attempts to characterize its contract with Sears as a franchise agreement because it contends that: (1) its method of operation is prescribed by Sears; (2) its trucks must be painted a certain color and carry the Sears name and logo; and (3) Lads has indirectly been required to pay Sears a sum of money

which Lads calls a franchise fee. This is actually a $200 per month rental charge which Sears exacts from Lads for parking its trucks on Sears property at the property at the distribution center.

These arguments are lacking in persuasiveness. The essence of the agreement is that Lads provides a delivery service for goods sold by Sears to its customers.

Lads collects an assemblage of packages from Sears Distribution Center and performs the service of taking these packages to the persons to whom Sears has sold them. It ordinarily has no idea what goods are contained in the package and does not in any way warrant the quality of the contents to the customers. Any complaint eminating from the customer would be addressed directly to Sears and the customer looks upon the delivery person as having had no participation in the contract of sale.

These facts must be given due weight in a consideration of the probability of plaintiff prevailing on the merits at trial. However, the facts suggest that the agreement between Lads and Sears is not a franchise and Lads is not a franchisee, but merely an independent contractor or common carrier providing transportation services for Sears. Cal.Corp.Code § 31005.5(d).

## PRELIMINARY INJUNCTION

■ The Ninth Circuit cases state that the District Court must evaluate and then compare the likelihood of success on the merits and the relative hardship to the parties of granting or denying preliminary injunction relief. *Martin v. International Olympic Committee*, 740 F.2d 670, 674 (9th Cir.1984).

A party seeking injunctive relief must meet one of two tests. Under the first, a court may issue a preliminary injunction if it finds that:

(1) The moving party will suffer irreparable injury if injunctive relief is not granted,

(2) The moving party will probably prevail on the merits at trial,

(3) In balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction, and

(4) Granting the injunction is in the public interest.

*Martin v. International Olympic Committee, supra* at 674, citing *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 87 (9th Cir.1975).

Alternatively, a court may issue a preliminary injunction if the moving party demonstrates "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* at 88.

## CONCLUSION

Lads has not shown that it will succeed on the merits of its franchise argument and the injunctive relief sought should be denied.

IT IS SO ORDERED.