646 So.2d 1113 (1994)
AAA DELIVERY, INC.
v.
AIRBORNE FREIGHT CORPORATION and Twin-Air, Inc.
No. 94-CA-346.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1994.
Writ Denied February 9, 1995.
*1115 S. Ault Hootsell, III, David M. Hunter and Robert S. Eitel, New Orleans, for plaintiff/appellant AAA Delivery, Inc.
Timothy W. Cerniglia and James H. Colvin, Jr., Cerniglia Law Firm, New Orleans, for defendant/appellee Airborne Freight Corp.
Before WICKER and CANNELLA, JJ., and JOHN C. BOUTALL, J. Pro Tem.
CANNELLA, Judge.
Plaintiff, AAA Delivery, Inc. (AAA), appeals from two judgments in a breach of contract case filed against defendants, Airborne Freight Corporation (Airborne) and Twin-Air, Inc. One judgment dated August 16, 1993 granted the peremptory exceptions of no cause of action and prescription filed by Airborne relative to some of the claims filed by AAA. The second judgment dated November 30, 1993 dismissed the remaining claims after AAA failed, for the fourth time, to comply with a court order to amend its petition, in order to cure the dilatory exception of vagueness filed by Airborne and granted by the trial judge. We affirm the granting of the exception of no cause of action. We reverse the granting of the exception of prescription and the dismissal of the suit based on failure to amend and the exception of vagueness.
In 1987, the parties executed a cartage agreement whereby AAA agreed to deliver packages by ground transportation to Airborne's customers in the New Orleans metropolitan area and the Mississippi Gulf Coast region. Working as an independent contractor, AAA provided the pick-up and delivery services for overnight deliveries for a period of fifteen years. The cartage agreement was rewritten in 1990 and the parties operated under that contract until May 22, 1992, when Airborne terminated the agreement according to the contract terms.
AAA filed a suit against Airborne on May 28, 1992, asserting several categories of breach of the contract: 1) underpayments due to the institution of two special programs for Airborne's customers; 2) improper penalty assessments; 3) failure to provide dispatch facilities; 4) wrongful appropriation of certain routes; and, 5) refusal to grant a right of first refusal on certain routes.
Airborne responded with several exceptions, including an exception of vagueness, which the trial judge heard on September 10, 1992 and granted with an order to amend on September 17, 1992. Subsequently, the petition was amended again on October 16, 1992, December 28, 1992 and February 10, 1993 in response to Airborne's exceptions of vagueness and the orders of the trial judge. In the February amendment, AAA added a cause of action for goodwill compensation pursuant to the state of Washington Investment Protection Act (a franchise protection act). In this respect, AAA alleged that the contract provides that the laws of the state of Washington apply to disputes concerning the cartage agreement. On April 6, 1992, Airborne refiled peremptory exceptions of no cause of action and prescription, along with another dilatory exception of vagueness. On August 16, 1993, the trial judge granted the exceptions of no cause of action to the goodwill claim under The Washington Investment Protection Act and prescription as to those claims arising prior to two years before the suit was filed. He rejected AAA's argument that the claims were subject to the prescriptive period of six years under the Washington act. AAA then appealed the judgment granting the exceptions of no cause of action and prescription.
The trial judge also granted the exception of vagueness and ordered AAA to file another amendment within forty-five days. When AAA failed to comply with the fourth order to amend, Airborne filed a Motion To Dismiss, which was granted by the trial judge on November 30, 1993. AAA next requested *1116 written reasons and specifically requested the trial judge to explain what was needed to cure the vagueness allegation. The trial judge submitted written reasons stating that the dismissal was for failure to comply with the order to amend and that the vagueness problem could not be cured by amendment. He declined to be more specific. AAA then appealed the judgment dismissing the case and the two appeals were subsequently consolidated.
On appeal, AAA asserts that the trial judge erred in granting the exceptions of prescription and no cause of action. It also asserts that the trial judge erred in dismissing the case when it was divested of jurisdiction by the pending appeal of the first judgment.

EXCEPTION OF NO CAUSE OF ACTION
The Washington Investment Protection Act, which regulates franchise agreements, provides that a franchisee is entitled to recover compensation for goodwill when the franchise contract is terminated. RCWA 19.100.180(2)(i). AAA argues that this applies because it meets the definition of a franchisee and because the cartage agreement at issue in this case provides that Washington law will apply to disputes. Airborne asserts that the contractual provision relates only to disputes involving the interpretation and construction of the contract terms, not to a breach of the contract claim.
The two cartage agreements state that:
This Agreement, including the Schedules attached hereto, constitutes the full understanding by and between the parties ... (It) shall be interpreted and construed in accordance with the laws of the State of Washington. In the event of any suit (blank) legal action to enforce any of the provisions of this Agreement, costs and reasonable attorneys' fees shall be awarded to the prevailing party. (Emphasis added)
In order to determine whether the contract falls within the ambit of the Washington Investment Protection Act, the contract terms of "interpret" and "construe" must be reviewed and understood. The definition of "construe" in Webster's Third New International Dictionary is: "To put a construction on: discover and apply the meaning and intention of with reference to a particular state of affairs." Webster's defines "interpret" as: "To explain or tell the meaning of, to understand and appreciate in light of individual beliefs, judgment, interest or circumstance." After reviewing the words of the contract, we find that the intent of the provision was to choose Washington law for the settlement of disputes. Consequently, we hold that the Washington Investment Protection Act applies to this case, if AAA is a franchisee within the meaning of that act.
The Washington act RCWA 19.100.010(4)(a) defines a franchise as:
(4) "Franchise" means:
(a) An agreement, express or implied, oral or written, by which:
(i) A person is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan prescribed or suggested in substantial part by the grantor or its affiliate;
(ii) The operation of the business is substantially associated with a trademark, service mark, trade name, advertising, or other commercial symbol designating, owned by, or licensed by the grantor or its affiliate; and
(iii) The person pays, agrees to pay, or is required to pay, directly or indirectly, a franchise fee.
A marketing plan under RCWA 19.100.010(5) is:
(5) "Marketing plan" means a plan or system concerning an aspect of conducting business. A marketing plan may include one or more of the following:
(a) Price specifications, special pricing systems or discount plans;
(b) Sales or display equipment or merchandising devices;
(c) Sales techniques;
(d) Promotional or advertising materials or cooperative advertising;
(e) Training regarding the promotion, operation, or management of the business; or
*1117 A franchise fee is defined in RCWA 19.100.010(12) as:
(12) "Franchise fee" means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for the mandatory purchase of goods or services or any payment for goods or services available only form the franchisor, or any training fees or training school fees or charges; however, the following shall not be considered payment of a franchise fee: (a) the purchase or agreement to purchase goods at a bona fide wholesale price; (b) the purchase or agreement to purchase goods by consignment; if, and only if the proceeds remitted by the franchisee from any such sale shall reflect only the bona fide wholesale price of such goods; (c) a bona fide loan to the franchisee from the franchisor; (d) the purchase or agreement to purchase goods at a bona fide retail price subject to a bona fide wholesale transaction; (e) the purchase or lease or agreement to purchase or lease supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement at their fair market or rental value; (f) the purchase or lease or agreement to purchase or lease real property necessary to enter into the business or to continue the business under the franchise agreement at the fair market or rental value; (g) amounts paid for trading stamps redeemable in cash only; (h) amounts paid for trading stamps to be used as incentives only and not to be used in, with, or for the sale of any goods.
After reviewing the franchise act, we conclude that this contract is not a franchise agreement within the meaning of the Washington Investment Protection Act. Thus, we find that the trial judge did not err in granting the peremptory exception of no cause of action for the goodwill claim.

EXCEPTION OF PRESCRIPTION
The trial judge concluded that the claims of AAA which arose prior to May 22, 1990 were prescribed based on La.R.S. 45:1100. AAA argues that the six year period provided by Washington law in breach of contact cases is applicable.
The laws of the state of Washington, which we have found applicable to this contract, provide for a six year prescriptive period in breaches of contract actions. RCWA 4.16.040; McGowan v. Pillsbury Co., 723 F.Supp. 530, 537 (W.D.Wash.1989). Under this prescriptive period, none of the claims are barred since the contract was executed in 1987 and the suit was filed in 1992. Thus, the judgment granting the exception of prescription is reversed.

JURISDICTION OVER THE EXCEPTION OF VAGUENESS
AAA argues that when the trial judge granted the order of devolutive appeal on the issues of the exceptions of no cause of action and prescription, he was divested of jurisdiction to address the exception of vagueness to the second supplemental petition and to dismiss the suit.
La.C.C.P. art. 2088 states that:
The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, ... on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal,... (Emphasis added)
The appeal that was pending involved the claim for goodwill and the prescription of certain other claims, discussed below. The exception of vagueness was not a matter reviewable under that appeal. Thus, we find that the trial court was not divested of jurisdiction to determine the vagueness exception and motion to dismiss.

EXCEPTION OF VAGUENESS
Airborne filed exceptions of vagueness to the original petition and three amended petitions. It argued that AAA failed to state well-pleaded facts in the petitions sufficient to state a cause of action which would allow it *1118 to defend. Further, Airborne asserts that AAA's argument that discovery will provide the details does not cure the exceptions of vagueness. Airborne specifically asserts that AAA should provide the number or dates of shipments at issue, the specific shipment that was underpaid or assessed penalties, or the amount of damages for each alleged breach. AAA, on the other hand, asserts that the petitions are sufficient to put the Airborne on notice of the claims and that more detail cannot be given without discovery. AAA contends that it has provided as much information as is practical in the petitions and the exhibits, given the limits of its own records.
The trial judge dismissed AAA's claim after it failed to amend the petition for the fourth time. Additionally, he stated that the petition could not be cured of vagueness.
The trial court has discretion to dismiss a claim when the amendment will not cure the petition of the grounds of an exception or if a party fails to amend pursuant to the trial judge's order. La.C.C.P. art. 932. However, in order to determine if the trial judge abused his discretion in either granting the exception of vagueness or dismissing the case for failure to amend, a review of petitions is necessary.
In Washington v. Flenniken Construction Company, 188 So.2d 486, 489 (La.App. 3rd Cir.1966), the court set forth a well written analysis of the dilatory exception of vagueness. The court stated that:
The purpose of the exception of vagueness is to place the defender on notice of the nature of the facts sought to be proved so as to enable him generally to prepare his defense, as well as additionally by a formal pleading to identify the cause of action so as to bar its future relitigation after determination by the present suit. (citations omitted.) However, the defendant is not entitled through the exception of vagueness to require exactitude and detail of pleading beyond those necessary for these aims. (Emphasis added)
The court further stated that the appellate courts have consistently reversed dismissals because of non-amendment to comply with the judgment granting the vagueness exception, when the defendant was fairly informed of the general nature of the cause of action and the petition contained sufficient particulars to allow the defendant to prepare its defense against evidence admissible under such allegations. Washington at p. 490.
The petitions are too lengthy to quote herein, however, AAA asserted five categories of claims. We will address the claims separately.

CLAIM 1Underpayments:
In the petitions, AAA alleges that Airborne instituted two programs, the Libra II program and the Special Delivery program, during the course of the agreements which provided special discount rates to certain customers. Allegedly, this was done unilaterally, without the consent of AAA and those special rates were then paid to AAA in contravention of the rates set forth in the cartage agreements.
In the Libra II program, Airborne charged a flat rate for any number of packages delivered to the customer, instead of a per package rate. It then paid AAA the same rate instead of the base rate per package that was provided for in the contract. The base rate was $2.59 per a schedule attached to the contract and applied to the primary service areas of the New Orleans metropolitan area and the Mississippi Gulf Coast. The flat rate charged to the customer and paid under Libra II to AAA was either $25 or $35.
Under the Special Delivery program, similarly, Airborne charged special customers a "special delivery" flat rate for multiple deliveries or pick-ups. It then paid AAA the same rate for all packages handled it for that customer.
AAA states that there are thousands of shipments at issue and asks for an accounting and all underpayments. In support of the claim, AAA attached computer runs showing total shipments for an eight week period for New Orleans ending March 29, 1992 and computer delivery sheets for the months of December, 1991 and January and February 1992. These computer runs show thousands of deliveries by weight and amount.
*1119 AAA also attached a notice by Airborne to its employees of the institution of the Libra II program dated October 1987 and a sample invoice dated November 21, 1991 to show how much was paid under the two programs and how much should have been paid under the contract. That example showed a difference between $2.59 per package and $25-$35 for numerous deliveries. In one instance the regular rate would have totaled over $200, but the appellant was paid $25-$35. This document shows that wherever such a payment was made, the appellee noted it as either Special Delivery or Libra II.
After reviewing all of the petitions, we conclude that AAA met its burden and has pled facts sufficient to alert Airborne to the nature of the claims. We note that Airborne complains that AAA is attempting to circumvent its burden to plead its damages through discovery, which means it will have to go through all of its numerous documents, when AAA also has those records. However, that complaint is more properly addressed in the motion for a protective order (which was filed in the trial court and never ruled on) and not through an exception of vagueness. Further, the damages claimed are also alleged in both the petitions and the agreements attached to the petitions which set forth the base rate and state that no amendments to the rate can be made without written approval of AAA. In addition, although AAA does not give a total amount, we find these allegations of underpayments sufficient since the specific programs are easily noted on the invoices and because AAA also contends that it does not have all the documents necessary, without discovery, to give a total. Consequently, since we find that AAA has pled enough information to permit Airborne to prepare a defense for the underpayments, we reverse the judgment dismissing AAA's claim for failure to file a fourth amendment to the petition for this claim.

CLAIM 2Failure to Provide Dispatch Facilities:
AAA asserts in the petitions that the cartage agreements require Airborne to provide dispatch facilities and that Airborne failed to do so for the Mississippi Gulf Coast service area. As a result, AAA was forced to build a facility. AAA asks the court to award damage for this failure or reasonable rentals.
We find that these allegations are not vague, but are sufficient to advise Airborne of the nature of the claim. Thus, we reverse the judgment dismissing these claims.

CLAIM NO. 3Penalty Charges:
AAA contends in the petitions that Airborne improperly and in bad faith assessed penalty charges against it at various times throughout the contract term. It asserts that the agreements allow Airborne to assess the penalty for late deliveries, but that it did so even when the late delivery was due to late arrival by air or other circumstances beyond its control. Further, AAA states that it is unable to determine from the invoices when this occurred in order to calculate damages because the invoices do not specify the reason for the deductions. The invoices only show a deduction for service failure. As a result, AAA also requests an accounting as well as the improperly assessed amounts. Likewise, AAA asserts a claim and accounting for deductions due to radio losses, which are also unexplained on the invoices.
We find no vagueness in these allegations. Thus, the trial judge erred in dismissing the claims for failure to amend and we reverse the judgment.

CLAIM NO. 4Improper Appropriation of Routes:
The fourth category of claims in the petitions involves the appropriation of certain routes in uptown New Orleans, Kenner, the section of Metairie known as old Metairie, Harahan and the Jefferson Highway area. The petitions contend that Airborne took these routes away and gave them to one of AAA's competitors or kept the routes for itself, even though the routes were guaranteed under the contracts. AAA contends that these were the most profitable routes and that it is entitled to damages under the Unfair Trade Practices Act. Attached to the petitions were exhibits show that the remaining routes are in remote areas and an exhibit showing the intent of the appellee to remove the New Orleans route from AAA's control.
*1120 The allegations for this claim of improper appropriation of routes clearly advised Airborne of the claims. Although the petition fails to value the routes, Airborne has sufficient knowledge of this so that it is not prejudiced by this failure. Airborne has sufficient information to prepare a defense. Furthermore, details of this and the other claims can be filled in by way of discovery interrogatories, and other discovery procedures. Thus, we find that the trial judge erred in dismissing the claim related to the improper appropriation.

CLAIM NO. 5The Right of First Refusal:
The final claim asserted in the petitions is that Airborne violated the agreements by failing or refusing in bad faith to allow AAA the right of first refusal on certain routes. AAA contends that Airborne offered routes to AAA's competitors in the primary service area, without first offering the routes to it. AAA attaches an exhibit showing one instance where Airborne gave a route in the primary service area to Twin-Air Corporation.
We again find that the assertions are not vague. By the nature of the claim, AAA cannot provide any further specifics without access to the records maintained by Airborne. For this reason, we find that the trial judge erred in dismissing the claim for damages for failure to honor the right of first refusal and reverse the judgment in that respect.
Accordingly, the judgment granting the peremptory exception of no cause of action is hereby affirmed. The judgment granting the peremptory exception of prescription is hereby reversed. Last, the judgment dismissing the suit for vagueness and the failure to amend is hereby reversed and the case is remanded for further proceedings.
The costs of this appeal are to be paid by Airborne.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.