[No. 23336-3-II.    Division Two.    April 9, 1999.]

EAST WIND EXPRESS, INC., ET AL., *Appellants*, v. AIRBORNE FREIGHT CORPORATION, *Respondent*.

99

*Garth L. Jones* of *Stritmatter Kessler Whelan Withey*, for appellants.

*Steven B. Tubbs* of *Schwabe, Williamson & Wyatt*, for respondent.

HUNT, J. — East Wind Corporation appeals a summary

judgment finding that it did not have a franchise relationship with Airborne Freight Corporation and, therefore, Airborne could terminate its contract at will. Holding that East Wind is an independent contractor, not a franchisee, we affirm.

## FACTS

Airborne Freight Corporation (Airborne) conducts a nationwide delivery service for packages from pick-up point to ultimate destination. Airborne receives packages at one of several stations located around the country; from there the packages go to Wilmington, Ohio, where they are sorted and routed to the ultimate destination station. Once at the destination station, the packages are delivered by either an Airborne employee or an independent contractor under a cartage contract[1] with Airborne.

Airborne invites bids for pick-up and delivery service by sending a letter, including a sample contract, to potential cartage contractors within a given geographic area. Beginning in 1990, East Wind Corporation (East Wind) held a cartage contract with Airborne; in 1993, the parties terminated their old agreement and executed a new contract.

Under the 1993 cartage contract, East Wind was to provide pick-up, transport, and delivery of shipments between Airborne's customers and Airborne's facilities in northern Oregon. The customer contacted Airborne; Airborne generated the pick-up information and relayed it to an East Wind driver. While delivering packages that had recently arrived from Airborne's sorting facility, East Wind picked up the package from the customer and delivered it to the Airborne facility. Airborne billed the customer and was responsible for the package from pick-up to ultimate destination. East Wind was "not entitled to receive any

---

[1]Cartage is "the act of carrying by cart or truck usu[ally] within a city[, or] the rate charged for carting or hauling[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 344 (1966). A cartage contract is an agreement whereby one party provides carting or hauling services for another.

portion of any charges made by Airborne to its shippers." Rather, Airborne paid East Wind based on an average number of packages it carried per day.

The contract further provided that

> usage of the Airborne trademarks or [trade name] on vehicle(s) and driver uniforms shall constitute an advertising service, the compensation for which is included in the agreed to rates reflected in SCHEDULE A of this Agreement.

East Wind chose to put the logo on its trucks. Its drivers wore Airborne uniforms. East Wind was required to maintain the trucks, uniforms, and logos according to standards established by Airborne.

The relationship between East Wind and Airborne deteriorated, and Airborne terminated the contract. East Wind sued Airborne, asserting eleven claims for relief, all of which the parties later agreed to dismiss with prejudice, except for the claim based on the alleged violation of Washington's franchise act. Airborne moved for summary judgment, asserting that as a matter of law, the contract between East Wind and Airborne did not constitute a franchise and was, therefore, properly terminated at will by Airborne.

On May 1, 1998, the trial court granted Airborne's motion for summary judgment. The trial court noted in its memorandum opinion that it appeared

> the services in the case at bar were pursuant to a highly organized and regulated marketing plan. There was a very strong association with the logo's; advertising and/or trade name of 'Airborne Express.' The deciding issue then, is whether payment of a franchise fee is required in order for the plaintiff to maintain a contract with the defendant.

The trial court then ruled that East Wind had not established any material issue of fact as to whether it had paid

any franchise fee and denied East Wind's motion to reconsider.

## ANALYSIS
### I. Standard of Review

██ ██ When reviewing an order of summary judgment, we conduct the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if pleadings, depositions, affidavits, and admissions, viewed in a light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. *Wilson*, 98 Wn.2d at 437. We can affirm the trial court on any grounds established by the pleadings and supported by the record. *Gross v. City of Lynnwood*, 90 Wn.2d 395, 401, 583 P.2d 1197, 96 A.L.R.3D 187 (1978).

Although here the trial court based summary judgement on the absence of franchise fees, we do not reach that issue. Rather, we base our holding on the fact that East Wind does not market, sell, or distribute Airborne Services to Airborne's customers. We hold that East Wind is an independent contractor hired by Airborne to pick up and deliver Airborne's customers' packages and that it is not a franchisee, entitled to protection of Washington's franchise act.

### II. Franchise Act

██ Our Legislature enacted the Washington Franchise Investment Protection Act (FIPA)[2] to curb franchisor sales abuses and unfair competitive practices. *Morris v. International Yogurt*, 107 Wn.2d 314, 317-18, 729 P.2d 33 (1986), *citing* Donald S. Chisum, *State Regulation of Franchising: The Washington Experience*, 48 Wash. L. Rev. 291, 334-90 (1973). FIPA defines franchising, regulates the sales of franchises through registration and disclosure requirements, and provides a "franchisee bill of rights." *Corp v.*

[2]Chapter 19.100 RCW.

*ARCO*, 122 Wn.2d 574, 579-80, 860 P.2d 1015 (1993). Registration and disclosure prevent fraud in franchise sales, and the "bill of rights" ameliorates the non-negotiable nature of the franchisor-franchisee relationship. Chisum, 48 WASH. L. REV. at 296-97.

■ In 1991, the Legislature changed the definition of a franchise under FIPA. LAWS OF 1991, ch. 226. Airborne argues that because its original contract with East Wind began in 1990, the earlier version of the statute should be used to test the alleged franchise relationship. Airborne cites *Corp v. ARCO*, 122 Wn.2d 574, for the proposition that a franchise was created by the original contract. The issue in *Corp* was whether a franchise offer constituted a termination and renewal of an existing contract. *Corp*, 122 Wn.2d at 579. Here, Airborne and East Wind terminated their 1990 agreement and entered a new contract in 1993.[3] Thus, we examine the 1993 contract in light of the current definition of "franchise," enacted in 1991.[4]

Under RCW 19.100.010(4), a franchise is

(a) An agreement, express or implied, oral or written, by which:

(i) A person is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan prescribed or suggested in substantial part by the grantor or its affiliate;

(ii) The operation of the business is substantially associated with a trademark, service mark, trade name, advertising, or

---

[3]Even though the contracts were substantially the same, Airborne and East Wind clearly terminated the 1990 contract and entered a new contract in 1993. Thus, there is no question, as in *Corp*, as to whether the parties entered a new agreement. *See Corp v. ARCO*, 122 Wn.2d 574.

[4]Under RCW 19.100.900, the provisions of FIPA "shall be applicable to all franchises and contracts existing between franchisors and franchisees and to all future franchises and contracts." But if application of FIPA to contracts existing before its enactment would effect an unconstitutional abridgement of contractual obligations, FIPA will not apply to those contracts. *Chico's Pizza Franchises, Inc., v. Sisemore*, 544 F. Supp. 248 (E.D. Wash. 1981) *aff'd*, 685 F.2d 440 (9th Cir. 1982). We need not address this issue because the parties entered into the contract in question in 1993, and the current definition of franchise was in effect at that time.

other commercial symbol designating, owned by, or licensed by the grantor or its affiliate; and

(iii) The person pays, agrees to pay, or is required to pay, directly or indirectly, a franchise fee.

To establish that it is a franchisee, East Wind must demonstrate that: (1) Airborne granted it the right to offer, sell, or distribute goods or services under a marketing plan substantially provided by Airborne; (2) operation of its business was substantially associated with Airborne's trademark; and (3) it paid Airborne a franchise fee. RCW 19.100.010(4). East Wind cannot meet this test.

Airborne's service is package delivery, which it markets and sells directly to customers. East Wind delivered and picked up some of Airborne's packages, but it did not market or sell this service to individual customers. Rather, the customer called Airborne, which then noted the shipment in its computer system. The East Wind dispatcher, working from an Airborne-provided computer terminal, radioed an East Wind driver and coordinated East Wind's pickup and delivery of *Airborne's shipments* for *Airborne's customers*. Airborne sold the service to its customers, and East Wind provided delivery of the packages. Airborne did not grant to East Wind the right to offer, to sell, or to distribute any goods or services under a marketing scheme substantially provided by Airborne. Therefore, East Wind was not Airborne's franchisee.

Interpreting California's franchise act, which contains the same definition of franchise as Washington's 1991 FIPA, a federal district court found that no franchise existed in a situation similar to the one presented here. *Lads Trucking Co. v. Sears, Roebuck & Co.*, 666 F. Supp. 1418 (C.D. Cal. 1987). Lads operated a trucking company and contracted with Sears to deliver purchases to customers' homes. *Lads Trucking*, 666 F. Supp. at 1419. The parties' contract was valid for one year; they renewed the contract each year for 20 years. When the contract was not renewed, Lads sued Sears under the California's franchise act. *Lads Trucking*, 666 F. Supp. at 1419.

Lads claimed that "(1) its method of operation is prescribed by Sears; (2) its trucks must be painted a certain color and carry the Sears name and logo; and (3) Lads has indirectly been required to pay Sears a sum of money which Lads calls a franchise fee." *Lads Trucking*, 666 F. Supp. at 1420. But the court held that Lads merely provided a delivery service for goods sold by Sears; as such, "Lads is not a franchisee, but merely an independent contractor or common carrier providing transportation services for Sears." *Lads Trucking*, 666 F. Supp. at 1420. The California Court of Appeals "read *Lads* as holding simply that a delivery service which has no participation in the contract of sale is not a franchisee within the meaning of the CFIL [(California Franchise Investment Law)]." *Gentis v. Safeguard Business Systems, Inc.*, 60 Cal. App. 4th 1294, 1298, 71 Cal. Rptr. 2d 122, 123 (1998).

The Louisiana Court of Appeals reached a similar result interpreting Washington's FIPA in a case like the one before us. AAA had a cartage contract with Airborne to provide pick-up and delivery services for packages shipped by Airborne. *AAA Delivery, Inc. v. Airborne Freight Corp.*, 646 So. 2d 1113, 1115 (La. App. 5th Cir. 1994). Holding that Washington law applied to the case, the court looked to FIPA and ruled, "[a]fter reviewing the franchise act, we conclude that this contract *is not* a franchise agreement within the meaning of the Investment Protection Act." *AAA Delivery*, 646 So. 2d at 1117.

We find the reasoning of *Lads* and *AAA Delivery* persuasive. Like Lads and AAA, East Wind merely provided transportation services for Airborne. East Wind did not offer, sell, or distribute transportation services to the customers who ship goods with Airborne. We hold that East Wind did not have a franchise relationship with Airborne, East Wind is therefore not entitled to the benefits of FIPA, and Airborne was entitled to terminate the East Wind's cartage

contract at will.[5] We affirm the trial court's grant of summary judgment to Airborne.

ARMSTRONG, A.C.J., and HOUGHTON, J., concur.

Review denied at 138 Wn.2d 1023 (1999).

---

[5]Because we affirm on this ground, we need not address whether East Wind has paid any hidden franchise fees.