[No. 14517-4-III. Division Three. July 17, 1997.]

SCHREINER FARMS, INC., *Appellant*, v. CURT SMITCH, ET AL., *Respondents*.

*Peter B. Camp, Dean G. Von Kallenbach*, and *Camp Von Kallenbach, P.S.*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Colleen G. Warren* and *Jay D. Geck, Assistants*, for respondents.

BROWN, J. — Schreiner Farms, Inc., appeals the Klickitat Superior Court's order granting the Department of Wildlife's motion for summary judgment. Schreiner Farms contends the trial court erred by failing to find that WAC 232-12-064 effects a taking under both the Fifth Amendment to the federal constitution and article I, section 16 of the Washington Constitution. We affirm.

## Facts

Schreiner Farms is an 800-acre game ranch located in Dallesport, Washington, operated by John (Jack) Schreiner and his two sons. They raise various animals on the ranch including yaks, wallaroos, bison, spotted asses, emus, zebu, zebra, antelope, Sardinian donkeys, Fallow deer, and Sika deer. In the late 1980s, Schreiner Farms decided to farm elk as breeders and invested over $500,000 between 1989 and 1992 for 53 breeding elk ($320,000), special fencing (nearly $200,000), elk-handling facilities ($65,750), a sprinkler system ($83,989), and a well ($15,631). The herd increased through breeding to 200 elk.

At all relevant times, WAC 232-12-064 prohibited the sale of privately owned elk within Washington but did not ban their possession, transportation, or breeding within the state. In June 1992, by emergency regulation,[1] WAC 232-12-064 was amended to make it unlawful in

---

[1]The justification for the emergency amendment provides:

Washington to import, hold, possess, propagate, offer for sale, sell, transfer, or release elk (and other species), with certain exceptions.[2] Interested entities (including Schreiner Farms) sued the Washington State Department of Wildlife (Department); Curt Smitch, director of the Department; and members of the Washington State Wildlife Commission.[3] The plaintiffs contended the emergency regulations[4] were unconstitutional because they took property without just compensation, denied plaintiffs due process and equal protection of law, and violated the commerce clause. The United States District Court granted the plaintiffs' motion for summary judgment with respect to their procedural due process claim and enjoined the defendants from prohibiting the plaintiffs from propagating their animals. *Pacific N.W. Venison Producers v. Smitch*, 1992 WL 613294, slip op. at 8 (W.D. Wash. Sept. 2, 1992), *aff'd in part*, 20 F.3d 1008 (9th Cir.), *cert. denied*, 513 U.S. 918 (1994). However, the court granted summary judgment for the defendants on the equal protection, commerce clause, substantive due process, and takings issues. The takings claim was determined not ripe.

In October 1992, the Department again adopted WAC 232-12-064 as an emergency rule,[5] and in January 1993, adopted the revised version as a permanent rule effective

---

"The director and commission have found that the importation, possess [sic], sale, release and/or transfer within the state of the listed species, pose a serious threat to the health of native wildlife."

[2]The exceptions provide that animals acquired before June 20, 1992 may be retained if securely confined, and not propagated, sold, transferred or released, except that they may be sold or transferred for slaughter, or for export from the state, or to zoos.

[3]*Pacific N.W. Venison Producers v. Smitch*, 1992 WL 613294, slip op. (W.D. Wash. Sept. 2, 1992), *aff'd in part*, 20 F.3d 1008 (9th Cir.), *cert. denied*, 513 U.S. 918 (1994).

[4]WAC 232-12-017 was also at issue.

[5]The relevant language in the June 1992 and October 1992 versions are identical. Apparently the October 1992 adoption was to keep the regulation in effect until a permanent one was adopted. Under RCW 34.05.350(2), an emergency rule adopted under this section may not remain in effect longer than 120 days after filing. Further, an identical or substantially similar emergency rule

February 13, 1993. The Washington Alternative Livestock Association (WALA) challenged the permanent regulations[6] in Thurston County Superior Court. The superior court rejected all of WALA's contentions and found that the regulations were valid. WALA did not contend the regulations constituted a taking. In an unpublished opinion, Division Two affirmed the trial court's decision. *Washington Alternative Livestock Ass'n v. Smitch, noted at* 81 Wn. App. 1051 (1996), *review denied*, 130 Wn.2d 1026 (1997).

Schreiner Farms filed this matter in Klickitat County challenging the permanent regulation as an unconstitutional taking and sought $845,714 as just compensation for its investment costs and loss of investment opportunity. The trial court granted the Department's motion for summary judgment by memorandum opinion dated November 4, 1994, and entered its order on December 7, 1994. Schreiner Farms appeals.

## Standard of Review

■■ When reviewing an appeal of an order of summary judgment, this court engages in the same inquiry as the trial court. *Washington Fed'n of State Employees v. Office of Fin. Management*, 121 Wn.2d 152, 156-57, 849 P.2d 1201 (1993). Summary judgment is appropriate only when no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). This court will consider the facts in the light most favorable to the nonmoving party. *Bohn v. Cody*, 119 Wn.2d 357, 362, 832 P.2d 71 (1992). Summary judgment is appropriate if reasonable

---

may not be adopted in sequence unless conditions have changed or the agency has filed notice of its intent to adopt the rule as a permanent rule and is actively undertaking procedures to adopt the rule as a permanent rule. The Department had filed a notice of its intent to adopt the rule as permanent.

[6]WAC 232-12-017 was also at issue in the WALA case.

persons could reach but one result. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990); CR 56.

## Takings Claim Under the Washington State Constitution

Schreiner Farms contends WAC 232-12-064 results in either damage or a taking of its property requiring just compensation pursuant to article I, section 16 of the Washington State Constitution. The Washington State Constitution provides "[n]o private property shall be taken or *damaged* for public or private use without just compensation . . . ." CONST. art. I, § 16 (emphasis added.) Schreiner Farms contends the trial court erred by failing to construe the state constitution differently than the federal constitution. Schreiner Farms contends that although the Washington Supreme Court has not explicitly held that the Washington State Constitution provides greater protection, numerous Washington cases indicate that section 16 of the Washington State Constitution provides greater protection.[7] Specifically, the use of "damaged" in section 16 requires a different analysis and result than under the federal constitution.

The Washington Supreme Court has stated that although the words "or damaged" may make the Washington State Constitution more restrictive, "no Washington decision has attached significance to the difference in language in the context of police power regulation." *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 328 n.10, 787 P.2d 907, *cert. denied*, 498 U.S. 911 (1990). Accordingly, a *Gunwall*[8] analysis is necessary. However, Schreiner Farms briefed neither the trial court nor this court on the relevant *Gunwall* factors necessary for determining whether an independent analysis of the state constitution is proper. Schreiner Farms merely cites *Gunwall* in a footnote in its appellant's brief. Since Schreiner Farms

---

[7] *See e.g., State v. Superior Court of King County*, 26 Wash. 278, 289, 66 P. 385 (1901).

[8] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

has failed to brief *Gunwall*, this court will not address its argument that the state constitution provides greater protection. *See Guimont v. Clarke*, 121 Wn.2d 586, 604, 854 P.2d 1 (1993) (refusing to analyze a takings claim under the state constitution because the party asserting that claim failed to brief the *Gunwall* factors), *cert. denied*, 510 U.S. 1176 (1994).

### Takings Claim Under the Fifth Amendment to the United States Constitution

Schreiner Farms contends WAC 232-12-064 violates its Fifth Amendment property rights resulting in an unconstitutional taking because the regulation deprives it of the opportunity to earn a profit by raising elk in this state and reducing the value of its elk-related investments.[9] Accordingly, Schreiner Farms contends the trial court erred by granting the Department's motion for summary judgment.

■ Determining whether a regulation constitutes a taking under the Fifth Amendment requires a two-part threshold inquiry and, depending on the outcome of that inquiry, a further takings analysis. *Guimont*, 121 Wn.2d at 594. Under the threshold inquiry, the court first asks whether the regulation destroys or derogates any fundamental attribute of property ownership, including the right to possess, exclude others, and dispose of the property. *Id.* at 602. Another fundamental attribute is the right to make some economically viable use of the property. *Id.* Claims alleging a "physical invasion" or "total taking" are analyzed under this part of the threshold inquiry. *Id.* If the regulation infringes on a fundamental attribute of property ownership, then the court proceeds with its takings analysis. *Id.* at 603. This part of the anal-

[9]The Department contends the relevant parcel to be analyzed under a takings analysis is the ranch itself. Although the relevant parcel is not clear, it appears Schreiner Farms contends the regulation has taken its ability to profit from elk ranching, not that the regulation has taken the ranch.

ysis has been referred to as the "per se" or "categorical" treatment analysis.[10]

However, if a fundamental attribute of property ownership is not implicated and the landowner has failed to show a "physical invasion" or "total taking," then the court proceeds to the second part of the threshold inquiry, the benefit/burden analysis. Under this part, the court asks "whether the challenged regulation safeguards the public interest in health, safety, the environment or the fiscal integrity of an area, or whether the regulation 'seeks less to prevent a harm than to impose on those regulated the requirement of providing an affirmative public benefit.' " *Id.* at 603 (quoting *Robinson v. City of Seattle*, 119 Wn.2d 34, 49, 830 P.2d 318, *cert. denied*, 506 U.S. 1028 (1992)). If the regulation goes beyond preventing the harm and requires those regulated to provide an affirmative public benefit, the court proceeds with its takings analysis. *Guimont*, 121 Wn.2d at 603.

If a takings analysis is required, the court must first determine whether the regulation substantially advances a legitimate state interest. *Id.* at 604. If it does not, then the regulation constitutes a taking. *Id.* However, if the regulation does substantially advance a legitimate state interest, the court performs a balancing test by asking whether the state interest is outweighed by its adverse economic impact on the landowner. *Id.* To help answer this question, the court considers: "(1) the regulation's economic impact on the property; (2) the extent of the regulation's interference with investment-backed expectations; and (3) the character of the government action."[11] *Id.; Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S.

---

[10]This part of the analysis and the terminology is well explained in a recent case from Division One. *Guimont v. City of Seattle*, 77 Wn. App. 74, 80-81, 896 P.2d 70, *review denied*, 127 Wn.2d 1023 (1995).

[11]Schreiner Farms contends that a takings analysis under the federal constitution is based on these factors. In other words, the entire takings analysis up to this point is not necessary. However, the takings analysis in this opinion follows the Washington Supreme Court's latest test for a takings claim under the Federal Constitution.

104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978). If the court determines, based on this balancing test, that a taking occurred, the landowner is entitled to just compensation. *Guimont*, 121 Wn.2d at 604.

## Application of Law to Facts

■■ Turning to the present case, the first question is whether WAC 232-12-064 destroys or derogates any fundamental attribute of property ownership. Clearly the regulation does not prevent Schreiner Farms from possessing, excluding others, and disposing of its elk. The regulation also does not constitute a "physical invasion." Therefore, in order for Schreiner Farms to establish that the regulation destroys a fundamental attribute of ownership, it must establish a "total taking." In other words, Schreiner Farms must show WAC 232-12-064 deprived it of all economically viable use of its property.[12] Schreiner Farms contends it has suffered such a deprivation because under the regulation its only options are to keep the elk as pets, kill them, or sell them out of state in a distressed sale. The fact that Schreiner Farms' options are limited does not establish a deprivation of all economically viable use of its property. WAC 232-12-064 does not prohibit Schreiner Farms from selling its existing herd of elk out of state. Schreiner Farms contends this would amount to a forced or distressed sale because out-of-state buyers will not offer full price knowing that once Schreiner Farms has transported its elk out of Washington, it has no choice but to sell the elk no matter how low the price. Although this may pose a question of fact, there is no evidence in

---

[12]Schreiner Farms urges this court to look at the effect the regulation has on the special fencing, well, elk-handling facility, and irrigation system. Even if the court were to consider the regulation's effect on these fixtures, these items have not been rendered worthless by the regulation. The fencing, well, and irrigation system can still be used to raise other animals on the ranch. In particular, before Schreiner Farms entered the elk-raising business, it raised cattle on the ranch. Although the fencing is specific to the needs of elk-raising, there is no indication that it cannot be used to raise other animals. Finally, although the elk-handling equipment will no longer be useful to Schreiner Farms, there is no evidence it cannot be sold.

the record which is not purely speculative or conjectural supporting Schreiner Farms' assertion.

Schreiner Farms urges this court to rely on *Yancey v. United States*, 915 F.2d 1534 (Fed. Cir. 1990). The Yanceys acquired a flock of turkey breeder hens and turkey toms for purposes of selling the turkey hatching eggs. *Id.* at 1536. Due to an outbreak of a highly contagious viral disease in another state, the United States Department of Agriculture promulgated a quarantine prohibiting interstate shipments of live poultry and eggs, among other things. *Id.* The Yanceys' flock was not infected and was eventually sold for meat, although the flock was not raised to be economically viable for that purpose. *Id.* The Yanceys claimed the regulation amounted to a taking. The United States Court of Appeals concluded, based on the court's findings of fact, that the Yanceys had no choice but to sell their birds for substantially less than their value. *Id.* at 1541-42. The court also concluded that the Yanceys suffered an adverse economic impact and unanticipated deprivation of an investment backed interest. Although the regulation was for the public benefit, the court found that the regulation amounted to a taking and the public should be responsible for the Yanceys' losses.

Although *Yancey* is similar to the present case, a key difference is evident. In *Yancey*, there was unrefuted evidence that the Yanceys had no choice but to sell their turkeys for substantially less than their value. Schreiner Farms did not provide any evidence showing that by selling its elk out of state it would have to sell them for substantially less than their value. Schreiner Farms has merely made an unsupported allegation that such a situation is imminent.

Schreiner Farms also contends that the trial court erroneously relied on *Andrus v. Allard*, 444 U.S. 51, 100 S. Ct. 318, 62 L. Ed. 2d 210 (1979). *Andrus* involved a challenge to the Eagle Protection Act and the Migratory Bird Treaty Act which prohibited commercial transactions in parts of birds legally killed before the birds became protected by

the regulations. *Id.* at 52-54. The individuals challenging the regulations were engaged in the trade of Indian artifacts. A number of the artifacts were partly composed of feathers from protected birds. *Id.* at 54. However, these artifacts existed prior to the regulations' taking effect. *Id.* The Supreme Court held that the simple prohibition of the sale of lawfully acquired property did not effect a taking in violation of the Fifth Amendment. *Id.* at 67-68. The Court reasoned that although a significant restriction had been imposed on the means of disposing of the artifacts, the regulations did not compel the surrender of the artifacts and there was no physical invasion or restraint upon them. *Id.* at 65. The Court found that it was crucial the artifact owners retained the right to possess and transport the property as well as donate or devise it. *Id.* at 66. The Court also noted that although the regulations undeniably prevented the most profitable use of the appellees' property, that fact was not dispositive.[13] *Id.* "[L]oss of future profits — unaccompanied by any physical property restriction — provides a slender reed upon which to rest a takings claim." *Id.*

Similar to *Andrus*, Schreiner Farms retained the right to possess the elk. More importantly, Schreiner Farms also retained the right to transport the elk out of state to be sold in the same manner as when first purchased. In *Andrus*, the property owners retained the right to transport the artifacts but were prohibited from selling them. Although the regulation's prohibition on the propagation of the elk may have deprived Schreiner Farms of the most profitable use of the herd, this fact alone is not dispositive. Under *Andrus*, Schreiner Farms' loss of potential profits from its elk herd does not support its claim that the regulation effects a taking under the Fifth Amendment.

 Since Schreiner Farms has failed to establish that WAC 232-12-064 destroyed or derogated a fundamental at-

---

[13]*Yancey* distinguished *Andrus* in a footnote apparently on the basis that the property owners in *Andrus* had the opportunity to use their property in other economically viable ways. *Yancey*, 915 F.2d at 1542 n.4.

tribute of property ownership, in particular, the regulation did not amount to a "total taking," the analysis proceeds to the second part of the threshold inquiry. Under this part, the court asks whether the regulation safeguards the public interest or whether it "seeks less to prevent a harm than to impose on those regulated the requirement of providing an affirmative public benefit." *Robinson*, 119 Wn.2d at 49. The Ninth Circuit concluded that the purpose of the regulations was "to protect [the State's] wildlife from diseases and parasites, to maintain the genetic purity of its wildlife, to protect its wildlife from competition for forage and habitat, and to ensure that native wildlife will not be captured and added to captive herds." *Pacific N.W. Venison Producers v. Smitch*, 20 F.3d 1008, 1013 (9th Cir.), *cert. denied*, 513 U.S. 918 (1994). The court also noted that "the protection of wildlife is one of the state's most important interests." *Id.* Schreiner Farms has failed to show how the State's interest in the protection of wildlife goes beyond preventing a harm to requiring Schreiner Farms to provide an affirmative public benefit.

## Conclusion

Since WAC 232-12-064 does not go beyond preventing a harm to provide an affirmative public benefit and the regulation does not destroy or derogate a fundamental attribute of property ownership, the regulation does not effect a taking under the Fifth Amendment. *Guimont*, 121 Wn.2d at 603.

Affirmed.

SWEENEY, C.J., and KURTZ, J., concur.