LEWIS, C.J.
Appellant, the State of Florida, seeks review of a Final Judgment awarding Ap-pellee, Stephen D. Basford d/b/a Basford Farms, $505,000 plus interest for a taking of certain improvements on his real property as a result of article X, section 21 of the Florida Constitution, which is commonly referred to as the “Pregnant Pig Amendment.” The State argues that the trial court erroneously ruled that Appel-lee’s inverse condemnation claim was not barred by the four-year statute of limitations provided for in section 95.11(3)(p), Florida Statutes. It also contends that the trial court erred in finding a taking where the Amendment did not deprive Appellee of all reasonable and beneficial use of his real property. Finding no merit in either argument, we affirm.
The Amendment at issue, which makes it unlawful “for any person to confine a pig during pregnancy in an enclosure, or to tether a pig during pregnancy, on a farm in such a way that she is prevented from turning around freely,” was approved by Florida voters in 2002 but did not take effect until 2008. As found by the trial court, Appellee ran a sophisticated mass pork production operation in which the animals were housed in barns at all times. Appellee, who was reportedly one of only two pig farmers in Florida using gestation crates when the Amendment was passed, placed certain improvements on his real property for his business. These improvements included a breeding barn, a gestation barn where the gestation crates that were banned by the Amendment were used, a farrowing barn with farrowing crates, two finishing barns, a feed mill and shelter equipped for storing and mixing feed, a lab/office with equipment for artificial insemination, four water wells with pumps to serve the barns and feed mill, clay lagoons for waste disposal, and a metal chute with hydraulic cylinders for lifting pigs into trailers for transport to market. Appellee’s business depended on raising a high volume of pigs for market, and his improvements were designed for that purpose. Appellee shut down his business in 2003 after passage of the Amendment. According to Appellee, he could not, without the gestation crates, operate his business and compete with other producers who were not similarly restricted.
After shutting down his business, Appel-lee began raising perennial peanut hay on the tillable portion of his land. Appellee tore two barns down to the concrete slab and has built or is building new barns for his hay operation. The original barns could not be used for any purpose other than raising pigs because the eaves were too low. It was not possible to drive vehicles or equipment over the concrete flooring because of the gutters. The four-inch wells and 1,000 gallon tanks had no other practical use. Appellee was unable to lease the empty feed mill, and it had no other use. Through his local representatives, Appellee submitted a compensation claim for the loss of his business to the Legislature for 1.35 million dollars. Although appropriation bills were passed in 2004 and 2005, each was vetoed by the governor. In 2005 or 2006, Appellee sold for salvage value the gestation and farrowing crates, some concrete slats, and a heated nursery to a farmer in Georgia.
In January 2010, Appellee filed a complaint against the State for inverse condemnation and for compensation under the Bert J. Harris, Jr. Private Property Rights Protection Act. Appellee argued *481 that the Amendment deprived him of all economically viable and reasonable use of his business for a public purpose. The trial court granted the State’s summary judgment motion as to the second count of the complaint based upon Appellee’s failure to satisfy presuit notice requirements but denied the motion as to the inverse condemnation claim.
During the bench trial on the inverse condemnation claim, Appellee’s counsel explained that Appellee was not seeking any value for the land itself but was seeking the value of the improvements and the fixtures that he used in his pork production business. Counsel argued that the taking occurred in November 2008, when the Amendment took effect. The State’s counsel argued that Appellee’s cause of action accrued in 2003 when he voluntarily shut down his operation. Appellee testified that it was too expensive to rebuild the improvements for a pen-raising pig operation or to convert them for other farming operations. He estimated that it would cost $600,000 to convert to a pen-raising operation. Tim Hewitt, a former extension agent who testified by deposition, believed it would not be feasible for Appellee to stay in business if he was going to have to stop using gestation crates and substantially change his operation. After hearing arguments, the trial court stated in part that a takings analysis under Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), “has to take into consideration everything.”
In the Order of Liability on Partial Taking, the trial court noted that takings claims are either categorical in nature or as-applied. It determined that no categorical taking of Appellee’s property occurred because although the Amendment substantially impacted his ability to generate income from his business, the remainder of his property continued to generate income from crops. The trial court noted that under the analysis set forth in Penn Central Transportation Co., the test for an as-applied or regulatory taking requires consideration of three factors: (1) the regulation’s economic impact on the claimant; (2) the regulation’s interference with distinct investment-backed expectations; and (3) the character of the governmental action.
Focusing on Appellee’s improvements, the trial court found that there was a substantial reduction in their market value as a result of the Amendment and that the Amendment interfered with Appellee’s reasonable investment-backed expectations. In finding that the purpose of the Amendment was to prevent a public harm, the trial court concluded that the Amendment resulted in an as-applied or regulatory taking of Appellee’s improvements. The trial court found that the taking occurred on November 5, 2008, the effective date of the Amendment, and that the statute of limitations began to run at that time. It determined that Appellee was entitled to recover the fair market value of the improvements valued at the time of the taking less salvage value. Although noting that the Amendment restricted only the use of gestation crates, the trial court found that the Amendment resulted in the taking of all of the improvements due to their “functionally integrated nature.” The trial court further concluded that Ap-pellee’s business damages and his losses incurred in selling his breeding stock were not compensable. Thereafter, the trial court entered a Final Judgment wherein it ordered, pursuant to the parties’ stipulation as to the value of the property taken, that Appellee was entitled to $505,000 plus interest. This appeal followed.
The State first argues that the trial court erroneously ruled that Appellee’s inverse condemnation claim was not barred *482 by the four-year statute of limitations provided for in section 95.11(3)(p). However, contrary to the State’s argument that any taking occurred in 2002 when the Amendment was passed or in 2003 when Appellee shut down his business, the government had no enforcement authority to prohibit the use of gestation crates prior to the Amendment’s effective date in 2008. We, therefore, agree with the trial court that Appellee’s inverse condemnation claim accrued in November 2008. See Lamar Whiteco Outdoor Corp. v. City of W. Chicago, 355 Ill.App.3d 352, 291 Ill.Dec. 318, 823 N.E.2d 610, 624 (2005) (holding that the statute of limitations pertaining to the appellants’ challenge to a zoning ordinance that banned certain commercial and noncommercial off-premises advertising structures did not begin to run until a seven-year grace period expired because the ordinance did not affect the appellants’ right to display the billboards in their original state during the grace period).
The State also contends on appeal that the trial court erred in finding an as-applied taking of Appellee’s improvements. Article X, section 6(a) of the Florida Constitution provides that “[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner.” The standard of proof for an as-applied taking is whether there has been a substantial deprivation of economic use or reasonable investment-backed expectations. Shands v. City of Marathon, 999 So.2d 718, 723 (Fla. 3d DCA 2008). This requires a “ ‘fact-intensive inquiry of impact of the regulation on the economic viability of the landowner’s property by analyzing permissible uses before and after enactment of the regulation.’ ” Id. (citation omitted). When reviewing this issue, the trial court’s factual findings are afforded deference while its application of the facts to the law is reviewed de novo. See USA Independence Mobilehome Sales, Inc. v. City of Lake City, 908 So.2d 1151 (Fla. 1st DCA 2005); see also Dep’t of Transp. v. Fisher, 958 So.2d 586 (Fla. 2d DCA 2007).
While the State argues that the trial court erred in analyzing Appellee’s improvements without considering his overall farming business, the record establishes that the trial court was very much aware of the fact that Appellee continued to raise crops on his property. The trial court noted during the bench trial that a Penn Central analysis has to “take into consideration everything.” The trial court further noted that Appellee was not seeking compensation for any diminution in the value of his land and only alleged a taking of his business. It is also important to consider that the trial court labeled its order finding a taking as an “Order of Liability on Partial Taking.” See Res. Invs., Inc. v. United States, 85 Fed.Cl. 447, 477 (Fed.Cl.2009) (“If the taking is not of the entire parcel as a whole, either temporally or by its metes and bounds, government regulation can still effect a partial taking pursuant to the fact intensive Penn Central balancing test.”) (Emphasis in original). Another important consideration, which neither the State nor the dissent acknowledges, is that real property, tangible property, and intangible property may be the subject of a takings claim. See Acceptance Ins. Cos. v. United States., 583 F.3d 849, 854 (Fed.Cir.2009); see also Yancey v. United States, 915 F.2d 1534, 1541 (Fed.Cir.1990) (“For Fifth Amendment purposes, the [plaintiffs’] ownership of their turkey flock deserves just as much protection as if ownership of their farm had been appropriated.”); Dept of Agric. Consumer Servs. v. Mid-Fla. Growers, Inc., 521 So.2d 101, 102-05 (Fla.1988) *483 (holding that a taking occurred when the State burned the respondents’ healthy citrus trees as a result of a concern over citrus canker). Contrary to the State’s characterization of this case as an alleged taking of real property, Appellee did not allege a taking of his land. As such, under the facts of this ease, we reject the State’s argument that no taking could have occurred because the underlying real property was capable of being used for other purposes.
In determining that an as-applied taking occurred as a result of the Amendment, the trial court accepted Appellee’s testimony that his barns could not be used for any purpose other than raising pigs and that the wells and feed mill had no other practical purpose or use. The State offered no evidence below to refute Appel-lee’s testimony on alternative uses of the improvements. Nor has it argued on appeal that the improvements had any other purpose or that Appellee could have converted to a pen-raising pig operation. Cf. Schreiner Farms, Inc. v. Smitch, 87 Wash.App. 27, 940 P.2d 274, 278 n. 12 (1997) (holding that the regulation at issue did not effect a taking of the appellant’s elk herd and noting that the appellant’s special fencing, well, elk-handling facility, and irrigation system had not been rendered worthless by the regulation at issue because they could be used to raise other animals on the ranch). Although the Amendment only restricted the use of gestation crates, a fact which the trial court acknowledged, the court found that the other improvements were functionally integrated with the crates. The State does not challenge this finding on appeal either. As such, we are bound by the trial court’s factual findings as to the value, or lack thereof, of Appellee’s improvements as a result of the Amendment and, therefore, affirm the Final Judgment. In doing so, we note that our opinion should in no way be viewed as an expansion of rights under article X, section 6(a) of Florida’s Constitution. Our disposition is based solely upon the record in this case, the issues that were developed below, and the arguments that were raised by the State on appeal.
AFFIRMED.
WOLF, J., concurring with opinion; PADOVANO, J., dissenting with opinion.